Sedgwick, 0. J.
The relator was a member of a corporation, the defendant He was in regular form charged with a violation of one of the by-laws and was found guilty and was suspended from membership. He applied below for a peremptory mandamus to the corporation to restore him to membership. The application was denied and this appeal is taken from the order then made. '
The complaint against the relator charged him with or accused him of proceedings inconsistent with .just and equitable principles of trade as follows: Hon-fulfillment of contract of Hovember 16th, 1892. It thus appears that the offense alleged is the non-fulfillment of a contract, which is, in and of itself, stated by the complaint to be a proceeding inconsistent with just and equitable principles of trade.
The position taken by the relator is that neither the charter nor the by-laws made the mere non-fulfillment of a contract an offense.
The by-law in question was that any member who shall be accused, etc., of fraudulent breach of contract, or of any proceeding inconsistent with just and equitable principles of trade shall, etc. It is to be observed here that the by-law intends that a member shall be condemned when his breach of his contract shall be fraudulent. There would be no purpose of specifying this, if the intention were to permit generaly unjust and inequitable breaches of contract. If there were such an intention a fraudulent breach of contract would.not be specified. For, according to the meaning of “unjust and inequitable," as given by the respondent’s counsel, they would include the case of fraud.
*532 I am of opinion that a breach of contract in and of itself is not inconsistent with just and equitable principles of trade in a true sense. A breach of contract is a commission of some act, or its omission, specified or implied, in the contract. This commission or omission is not just or unjust, inequitable or equitable, for the law does not look for those qualities in adjudicating upon a contract, but simply at the contract and its terms. If, however, the words are to be taken in a moral sense, then the offense would be doing something in connection with the breach of contract, but which could not be a part of it, that was morally unjust and inequitable. In such a case the circumstances must be charged, and not merely the fact of breaking the contract.
It is asked whether it is possible to assume as matter of law that it is not and cannot be unjust and inequitable to break a cqntract. It is sufficient, I think, to say that the law has had no occasion, in passing upon a case of common law contract, to pass upon the question of whether a breach was unjust or inequitable. It would be unnecessary to do so. The subject would be irrelevant. It must be assumed, then,' that the law assumes a breach pure and simple of a contract of this kind is not unjust and is not inequitable. And if it is a matter turning upon a question of trade, morals, or general morals, the question will be determined by facts outside of the mere breach, and they will be a necessary part of the charge.
The by-law in question is founded upon or has received its validity from that part of the charter which concerns the same subject, and is as follows: “The purposes of said corporation shall be * * * to inculcate just and equitable principles of trade.” The complaint, in substance, then, was that the non-fulfillment of the contract was opposed to or at variance with the inculcation mentioned in the charter. According to Webster, „to inculcate means to impress by pregnant admonitions, to teach and enforce by frequent admonitions, to urge on the mind. On the face of the charter this inculcation, whether to be made by writing or in any other manner, was the duty of the corporation as such. It was not made the duty of the individual members. The corporation had done nothing towards the performance of this duty. The subject was very difficult to treat. The questions were involved of what is a principle of trade; do they involve matters of morals as well as of political economy; what is just and equitable; to what extent should the golden rule be enforced or should the maxim of business is business be enforced? Certainly the individual judgments of the members were not to be relied upon. Bach was not to determine thé questions alluded to. As long as the corporation had not acted, there was nothing to bind the members or to guide or enlighten them. I therefore think that, until the corporation had acted in the matter, anything done in trade by a member was not an opposition of the inculcation referred to in the charter. It might be believed that when the corporation proceeded, a particular act might be of a kind that was opposed to the corporate movement, but if the act was done before that, there was no violation of the charter. I think that as the case *533 of People ex rel. Thacher v. New York Commercial Association, 18 Abb. P. R., 279, proceeded upon the proposition that it was the duty of the individual members humanly to inculcate just and equitable principles of trade, it should not be followed.
There was no pretense upon the face of the complaint that the corporation had taken corporate action in respect of the subject. Therefore no offense recognized by the charter was stated, and the committee had no jurisdiction of the offense alleged as such by the complaint.
I am also of opinion that by the charter the common law right of the other party to the contract in question was preserved, and that involves the preservation of the common law right of the relator freely to defend, by any defense that might be made in such a court of law. And it is not pretended that, at the time of the relator’s trial before the board of managers, he did not have that right. The charter does not in any way refer to this right of defense. That cannot be opposed to the just and equitable principle of trade. But to threaten him, in ad vaneé of the action, with expulsion, and oppressively suspending him for non-fulfillment of his contract, would tend to deter or be an effort to deter him from the exercise of a legal right. This cannot be one of the purposes of the corporation, and a by-law made under such a charter is not sanctioned by it, and is against public policy. I, therefore, think that the board of managers had no power to entertain the complaint.
I cannot perceive that Hurst v. N. Y Produce Exchange, 100 N. Y. 605, touches the question. The prevailing opinion was, in substance, that a complaint of conduct against the just and equitable principles of trade,gave the complaint committee power to entertain it, and a right to the board of managers to try it. It was not to be assumed that it would be adjudged that the member was guilty for doing something that was not charged in the complaint or condemned in the by-law. It was not' decided that the non-fulfillment of a contract was intended by the by-law. Thát question was left for decision when it should arise, after proof was taken by the board. And it was considered that the complaint by itself gave jurisdiction. The complaint on its face did not show that the offense charged was the non-fulfillment of a contract.
The order below should be reversed, with $10 costs, and the motion granted, with $10 costs.